UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cv-1603-RLY-DML |
| ) | |
| INDIANA SECRETARY OF STATE, in her ) | |
| official capacity, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT SECRETARY OF STATE'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

Defendant, Indiana Secretary of State, in her official capacity, by counsel, Deputy Attorneys General Dino L. Pollock and Kenneth L. Joel, respectfully submits this memorandum of law in support of her Motion to Dismiss.

### I.   Introduction

Plaintiff has filed its Complaint, pursuant to 42 U.S.C. § 1983, raising a First Amendment[2] challenge to Indiana Code § 33-33-49-13, alleging, *inter alia*, that the statute prevents some of its — members and other registered voters in Marion County — from being able to cast a meaningful vote in Marion County Superior Court judicial elections. *See Compl.* at ¶¶ 5, 25, 28. As set forth below, Plaintiff's Complaint must be dismissed because Plaintiff lacks standing to bring this suit. Moreover, Plaintiff's Complaint must be dismissed because this suit is barred by the Eleventh Amendment and because the Complaint fails to state a claim upon which relief may be granted.

---

[2] Plaintiff raises a First Amendment challenge to the statute: however it never proffers which clause or provision of the amendment provides the appropriate basis for its claim.

## II.     Standard of Review

*Rules 12(b)(1) and 12(b)(6) Motions to Dismiss*

Rule 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The court accepts the well-pleaded allegations from the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1073-74 (S.D. Ind. 2011) (citing *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002), for Rule 12(b)(1) standard).  "When considering a motion to dismiss under Rule 12(b)(1), the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Eiteljorg*, *supra*, 813 F. Supp. 2d at 1074 (quoting *Capitol Leasing Co., v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)).

When deciding a Rule 12(b)(6) motion to dismiss, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kirk v. City of Kokomo*, 772 F.Supp 2d 983, 988 (S.D. Ind. 2011) (citing *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991)).  "[F]actual allegations in the complaint must be sufficient to raise the possibility of relief above a 'speculative level', assuming that all of the allegations in the complaint are true." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citation omitted).  Detailed factual allegations are not required, but the plaintiff must allege facts that state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

After the Supreme Court's ruling in *Iqbal*, this Court is to use a "two-pronged" approach to evaluate the sufficiency of a complaint.  "First, although a court must accept as true all of the

2

allegations contained in the complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Hayden v. Paterson*, 594 F.3d 150, 161 (7th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). "At the second step, a court should determine whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement of relief." *Id.* (internal quotations omitted).

Moreover, "a plaintiff can plead itself out of court when it admits all the ingredients for an impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Under those circumstances, it is appropriate to dismiss an otherwise valid claim under Rule 12(b)(6). *Id.*

### III. Analysis

#### A. Plaintiff's Complaint Must Be Dismissed Because Plaintiff Fails to Meet the Article III and Prudential Standing Requirements

At the heart of Plaintiff's Complaint is the allegation that the current statutory framework for electing judges to the Marion County Superior Court deprives some its members *and* other registered voters in Marion County of their First Amendment right to cast a meaningful vote in the general elections for local trial court judges. *See Compl.* at ¶ 25. Plaintiff alleges that as a result of the Secretary's actions or inactions, its members and other registered voters in Marion County are suffering irreparable harm and seek to enjoin the Secretary from enforcing Indiana Code Section 33-33-49-13. *See id.* at ¶¶ 26, 28. However, Plaintiff does not have Article III or prudential standing to raise the issue in federal court and its claim must therefore be dismissed.

1. Plaintiff fails to meet Article III Standing

The Supreme Court has articulated two strands of standing jurisprudence. One is Article III standing, which enforces the Constitution's case-or-controversy requirement, as outlined in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-62 (1992). *Winkler v. Gates*, 481 F.3d 977,

979 (7th Cir. 2007). The second strand is prudential standing, which is a "judicially self-imposed limit[] on the exercise of federal jurisdiction." *Id.* (citations omitted). Article III standing has three distinct elements: "injury in fact, a causal connection between the injury and the defendant's conduct, and likely redressability through a favorable decision." *Id.* (citation omitted).

First, Plaintiff must have suffered an injury in fact. Thus, Plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotations omitted). Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (citations and internal alterations omitted). Third, "it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (citation omitted). Plaintiff bears the burden of establishing the foregoing elements as it is the party invoking federal jurisdiction. *Id.* (citations omitted). *Accord*, *Scanlan v. Eisenberg*, 669 F.3d 838, 841-42 (7th Cir. 2012) (reviewing a 12(b)(1) motion to dismiss for lack of standing and holding that the "burden to establish standing is on the party invoking federal jurisdiction . . . .").

Plaintiff asserts, on behalf of its alleged 250 members in Marion County, that the Secretary's actions or inactions have caused them injury, in violation of the First Amendment, because they are unable to cast a meaningful vote for judges of the Marion Superior Court in scheduled general elections. *See Compl*. at ¶ 25. The Secretary assumes, for the purposes of the present motion only, that Common Cause could show that some of its members have suffered injury in fact. However, Plaintiff does not allege any facts to establish the final two elements of Article III standing: causation and redressability. Plaintiff's injury however, even if assumed to be true,

4

cannot be squared with another irrefutable fact; Plaintiff's purported injury cannot be traced to the action or inaction of the Secretary and cannot be redressed by the Secretary – because she has absolutely no duty or responsibility prescribed by law to enforce or otherwise administer the challenged statute; Indiana Code Section 33-33-49-13.

> a. *Indiana's Statutory Framework for Judicial Elections*

A review of Indiana's statutory framework for judicial elections compels that conclusion. The Indiana Legislature has promulgated a statutory framework that divides the labor of judicial elections between the Secretary, Indiana Election Commission, and the various county election boards. It is true, as Plaintiff has alleged, that the Secretary, in her official capacity, is the chief election official for the State of Indiana. *See Compl*. at ¶ 7; Ind. Code § 3-6-3.7-1. However, she is not tasked with the duties of administration, certification, and enforcement of Indiana's judicial elections and laws. The Indiana Legislature has given those responsibilities generally to the Indiana Election Commission ("The Commission"), in conjunction with the Indiana State Police respecting enforcement. *See* Ind. Code § 3-6-4.1-14 (Indiana Election Commission is charged with administering Indiana election laws); Ind. Code § 3-6-4.1-23 (provides the Indiana State Police with enforcement powers); Ind. Code § 3-6-4.1-19 (Indiana Election Commission has subpoena powers); Ind. Code § 3-6-4.1-22 (providing the Attorney General with powers).

Moreover, these statutory provisions must be read in concert with and harmonized by other pertinent provisions of the Indiana Code. To that end, Indiana Code Section 3-6-5-14 provides in pertinent part:

> (a) Each county election board, in addition to duties otherwise prescribed by law, shall do the following:
>> . . .
>> (2) *Conduct all elections and administer the election laws within the county*, except as provided in IC 3-8-5 and IC 3-10-7 for town conventions and municipal elections in certain small towns . . . .

(emphasis supplied). This is consistent with the provisions enumerated in the Commission's powers which provide in pertinent part:

> (b) This section does not divest a county election board of any powers and duties imposed on the board in IC 3-6-5, except that if there is a deadlock on the county election board, the county election board shall submit the question to the commission for final determination.

Ind. Code § 3-6-4.1-14(b); *Accord*, *Marion County Democratic Party v. Marion County Election Board*, No. IP 01-1963-C-T/K, 2002 WL 1354717 at *1 (S.D. Ind. May 9, 2002) (noting that "[a]mong the duties of the [Marion County] Election Board are to conduct all elections, *administer the election laws within Marion County*, and prepare all ballots to be used in elections.") (emphasis supplied). In short, the Legislature was quite clear about the delineation of powers between the state commission and the county election boards. The county election boards are enlisted with the requisite powers to administer and enforce local judicial elections, not the Secretary.

In an attempt to avoid this conclusion, Plaintiff has generally alleged that the Secretary is charged by law with certifying the results of judicial elections in Indiana. *See Compl*. at ¶ 7. They point to Indiana Code Section 3-12-5-1 for authority on that allegation. However Plaintiff misconstrues the provisions of that statute, which reads in its entirety:

> (a) Whenever a candidate is elected to a local office that is commissioned by the governor under IC 4-3-1-5, the circuit court clerk shall prepare a statement under the clerk's seal specifying the number of votes received by each candidate for that office.
> (b) The statement prepared under subsection (a) must also include the number of votes cast for and against the following:
> (1) The ratification of a state constitutional amendment submitted to the electorate.
> (2) The retention of a justice of the supreme court or a judge of the court of appeals or tax court.
> (3) Each candidate who was declared elected by the county election board under IC 3-12-4-9.
> (c) The clerk shall send or hand deliver the statement to the election division not later than noon on the second Monday following election day.

> (d) The election division shall tabulate the votes received under this section. Not later than the third Friday after the election, the secretary of state shall issue a certificate certifying the following:
> (1) Each state constitutional amendment ratified or rejected.
> (2) Each justice or judge retained or removed.
> (e) The election division shall provide a copy of a certificate described by:
> (1) subsection (d)(1) to the chief justice of the Indiana supreme court and the director of the office of code revision of the legislative services agency; and
> (2) subsection (d)(2) to the chief justice of the state.
> (f) The election division shall provide a copy of all statements received under this section to the office.

Ind. Code § 3-12-5-1.

Subsection (a) speaks to the responsibilities of the county court clerks in transmitting local election results for offices commissioned by the governor under Indiana Code Section 4-3-1-5 to the Secretary's election division. All judges in Indiana are commissioned by the governor. Ind. Code § 4-3-1-5(4). Subsection (b)(3) provides that the county court clerk is to transmit to the election division "each candidate who was declared elected by the county election board under I.C. 3-12-4-9." Indiana Code Section 3-12-4-9 delineates election certification procedures by county election boards and provides in pertinent part:

> (a) This subsection applies to:
> (1) *a local or school board office with an election district located entirely within one (1) county, except for an office for which a declaration of candidacy is filed with the election division under IC 3-8-2*; and
> (2) a political party office, such as precinct committeeman or state convention delegate, elected at a primary election.
> After the county election board has tabulated the vote, the board shall declare the candidate receiving the highest number of votes for each office to be elected.
> (b) The county election board shall tabulate the votes cast for and against each local public question placed on the ballot by the county election board under IC 3-10-9-2 and, if the local public question is placed on the ballot only in that county, declare the public question approved or rejected.
> (c) The county election board shall tabulate the votes cast for and against each public question voted on by the electorate of the whole state.
> (d) *The board shall certify the election results in a statement prepared by the circuit court clerk*.

Ind. Code § 3-12-4-9 (emphasis supplied). Marion County conducts local elections within its boundaries, including all judicial elections for the Marion County Superior Court. The plain

7

language of the foregoing statutory provisions makes clear that the county election board has been tasked with the duty of certifying the judicial election results to the circuit court clerk, who then transmits a statement of said result to the Secretary's election division.  Once the county board has certified the local election results in a statement prepared by the circuit court clerk, the circuit court clerk shall prepare a certified statement under the clerk's seal of the number of votes received by each candidate for local office for which a declaration of candidacy must be filed with the Secretary under Indiana Code Section 3-8-2-5.  *See* Ind. Code § 3-12-5-6(a)(4).  Judges of the superior courts of Indiana must file a declaration of candidacy with the Secretary's office.  *See* Ind. Code § 3-8-2-5(4)(A).  The circuit court clerk is then responsible for sending the certified statement to the Secretary's election division.  *See* Ind. Code § 3-12-5-6(b).   Once received, the Secretary *must* accept the certified statement received under seal from the circuit court clerk provided in accordance with Indiana Code Section 3-12-5-6.  *See* Ind. Code § 3-12-5-13.

According to Indiana Code Section 5-12-5-1, the Secretary certifies only the judicial retention election votes of Indiana jurists of the Indiana Supreme Court, Court of Appeals, and Tax Court.  This stands to reason because the county election boards administer and certify judicial election results of judicial offices in their counties.  The Secretary administers and certifies the retention election results of appellate judges as those individuals stand for statewide retention elections.  The Legislature has deemed this a reasonable and appropriate division of labor and responsibility between state and local officials in the administration of Indiana elections.

### b. *Application of Indiana's Statutory Framework to Plaintiff's Challenge*

This finally leads us to Plaintiff's constitutional challenge to Indiana Code Section 33-33-49-13, the statute that provides for the election of Marion County Superior Court judges.  A

8

substantive review of the statute also reveals further support that the Secretary has no responsibility for administering the statute. Indiana Code Section 33-33-49-13 provides in its entirety:

> (a) Each judge of the court shall be elected for a term of six (6) years that begins January 1 after the year of the judge's election and continues through December 31 in the sixth year. The judge shall hold office for the six (6) year term or until the judge's successor is elected and qualified. A candidate for judge shall run at large for the office of judge of the court and not as a candidate for judge of a particular room or division of the court.
>
> (b) At the primary election held in 2008 and every six (6) years thereafter, a political party may nominate not more than eight (8) candidates for judge of the court. At the primary election held in 2006 and every six (6) years thereafter, a political party may nominate not more than ten (10) candidates for judge of the court. The candidates shall be voted on at the general election. Other candidates may qualify under IC 3-8-6 to be voted on at the general election.
>
> (c) The names of the party candidates nominated and properly certified to the Marion County election board, along with the names of other candidates who have qualified, shall be placed on the ballot at the general election in the form prescribed by IC 3-11. At the 2008 general election and every six (6) years thereafter, persons eligible to vote at the general election may vote for sixteen (16) candidates for judge of the court. Beginning with the 2006 general election and every six (6) years thereafter, persons eligible to vote at the general election may vote for twenty (20) candidates for judge of the court.
>
> (d) The candidates for judge of the court receiving the highest number of votes shall be elected to the vacancies. *The names of the candidates elected as judges of the court shall be certified to the county election board as provided by law*.

Ind. Code § 33-33-49-13 (emphasis supplied). The Secretary is not mentioned in this provision, and indeed, subsection (d) makes clear that the Legislature intended the county election board to administer and certify Marion County judicial elections.

Based on a plain reading of the foregoing statutory provisions, the Secretary has no responsibilities or duties for administering or enforcing Indiana Code Section 33-33-49-13. Therefore, Plaintiff's injury, taken as true for purposes of this Motion, cannot be said to be traceable to the Secretary's actions or inactions, and the causation prong of Article III standing analysis cannot be satisfied. Similarly, since the Secretary has absolutely no responsibility for

enforcing or administering the challenged statute, any favorable decision by this Court in favor of Plaintiff would not redress the harm from which Plaintiff complains.  As such, Plaintiff has not met its burden, and does not enjoy Article III standing as a constitutional prerequisite to invoke federal court jurisdiction. Therefore the Court should dismiss the Complaint for lack of standing as there is no case or controversy before the Court. *See MainStreet Organization of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 747 (7th Cir. 2007) (noting that "if there is no Article III standing, the court is obliged to dismiss the suit even if the standing issue has not been raised . . . .").

      2. <u>Plaintiff Fails to Meet Prudential Standing Requirements</u>

Plaintiff alleges the "failure of Indiana law to permit registered voters in Marion County to cast a meaningful vote for all seats on the Marion Superior Court violates the First Amendment . . . ." *See Compl*. at ¶ 28.  To the extent Plaintiff attempts to raise the claims of *other* "registered voters" in this matter, they are precluded from doing so by federal prudential standing principles. The Seventh Circuit has noted that "[p]rudential standing is somewhat harder to define, but [it] encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Winkler*, *supra*, 481 F.3d at 979 (citations and internal quotations omitted).  Prudential standing is a "judicially self-imposed limit[] on the exercise of federal jurisdiction." *Id.* (citation and internal quotation marks omitted).

The bar against "third-party standing is founded in the concern about the proper and properly limited role of the courts in a democratic society, that it sets limits on the class of persons who may invoke the courts' decisional and remedial powers, and that both Article III and prudential standing are threshold determinants of the propriety of judicial intervention." *Mainstreet*, *supra*,

505 F.3d at 748 (citation and internal alterations omitted). Both Article III and prudential standing "place limits on the exercise of federal jurisdiction." *Id.* at 749 (citation omitted).

Plaintiff seeks to assert the rights of various "registered voters" in Marion County, which it may not do. Even if Plaintiff could establish Article III standing, which it cannot, the prudential standing doctrine would preclude this Court from exercising jurisdiction over this case because this is the sort of generalized grievance more appropriately addressed in the representative branches of government. *See id*. at 745. Because Plaintiff's Complaint does not allow the Court to draw the reasonable inference that the Secretary is responsible for the injury alleged, the Complaint does not state a claim for relief that is plausible on its face and must be dismissed.

### B. Plaintiff's Complaint Must Be Dismissed Because it Is Barred by the State of Indiana's Eleventh Amendment Sovereign Immunity to Suit in Federal Court

Plaintiff has sued the Secretary in her official capacity for declaratory and prospective injunctive relief. "The Eleventh Amendment to the Constitution provides that 'the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Indiana Prot. & Advocacy Services v. Indiana Family & Soc. Services Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) *cert. denied*, 131 S. Ct. 2149, 179 L. Ed. 2d 952 (2011).

Notwithstanding the phrase "Citizens of another State" contained in the Eleventh Amendment, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Id*. (citing *Edelman v. Jordan,* 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)) (internal citations omitted). If properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities. *Id.* (citation omitted). The Seventh Circuit has explained that there are three principal types of exceptions to

the Eleventh Amendment's bar.  First, the state may waive immunity by consenting to suit in federal court.  *Id*. at 371.  Second, Congress may abrogate the state's immunity through valid exercise of its powers under recognized constitutional authority.  *Id*.  Third, under *Ex parte Young*, 209 U.S. 123, 159-60 (1908), a plaintiff may file suit against state officials seeking prospective equitable relief for ongoing violations of federal law . . . ."  *Id*. (citation and alteration omitted).

In *Ex parte Young*, the Supreme Court held that when a state official violates the federal Constitution, that official acts outside of the scope of his or her authority and is no longer entitled to the state's immunity from suit.  *Id*.  The *Ex parte Young* doctrine focuses on the identity of the defendant and the nature of the relief sought.  *Id*. at 372.  In this action, the State of Indiana is raising its immunity from suit as a jurisdictional bar to Plaintiff's Complaint.  Therefore consent to suit is obviously not established by the Complaint.  Next, Congress has not validly abrogated the state's immunity to suit under its constitutional authority so that exception is also unavailing to Plaintiff.  The only exception potentially available to Plaintiff, the *Ex parte Young* exception, is similarly futile for Plaintiff.  "This exception only applies when the named defendant state officials have *some connection with the enforcement of the act* and 'threaten and are about to commence proceedings' to enforce the unconstitutional act."  *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (citing *Ex parte Young,* 209 U.S. at 155-56) (emphasis in original).

"The *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required 'connection,' but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."  *Okpalobi*, 244 F.3d at 416.  "For a duty found in the general laws to constitute a sufficient connection, it must "include[ ] the right *and the power* to enforce the statutes of the state, including, of course, the act in question ..."  *Id.* at 416-17 (citation omitted) (emphasis in original).  "Thus, any probe

into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute." *Id.* at 417.

As shown above, the Secretary neither has the right nor the authority to enforce or nullify Indiana Code Section 33-33-49-13. *See, supra,* Ind. Code § 3-6-5-14; Ind. Code § 3-6-4.1-14. Moreover, there has been no demonstrated effort by the Secretary to enforce or pursue enforcement of the challenged statute. The Secretary has absolutely no role in the administration of elections laws in Marion County, neither does she certify any of the election results from Marion County judicial elections nor does she invalidate unconstitutional laws. *See, supra,* Ind. Code § 3-12-4-9.

"Without at least the ability to commit the unconstitutional act by the official defendant, the [*Young*] fiction cannot be sustained." *Okpalobi*, 244 F.3d at 421. "Indeed, if there is no act, or potential act, of the state official to enjoin, an injunction would be utterly meaningless." *Id*. That is precisely what the Court is presented with in this case. "Here, there is no act, no threat to act, and no ability to act." *Id*. Plaintiff's Complaint must be dismissed because the *Ex parte Young* fiction does not apply to this case and the state's Eleventh Amendment immunity bars this suit at the threshold.

### C. Dismissal of Plaintiff's Complaint Is Required by the Supreme Court's Decision in *New York State Board of Elections v. Lopez Torres*

Even if Plaintiff could establish standing and overcome the state's Eleventh Amendment immunity to suit, which it cannot, Plaintiff's Complaint still fails to state a claim upon which relief may be granted. Plaintiff challenges the constitutionality of Indiana Code Section 33-33-49-13 by alleging that it deprives some of its members and other registered voters in Marion County of their First Amendment right to cast a meaningful vote in the county's judicial elections. However, Indiana's statute for electing Marion Superior Court judges passes

constitutional muster in light of the Supreme Court's decision in *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008).

*Lopez Torres* involved a First Amendment challenge to New York State's system of electing its trial court judges, called Supreme Court justices. The plaintiffs in that case, who included judicial candidates, voters, and the New York branch of Common Cause[3], brought a § 1983 claim against the state election board and county Democratic committee seeking to have New York's system of judicial elections declared unconstitutional and seeking an injunction mandating the establishment of a direct primary election to select party nominees for state trial court judges. *Lopez Torres*, 552 U.S. at 202.

The United States District Court for the Southern District of New York issued a preliminary injunction granting the relief requested, pending the New York Legislature's enactment of a new statutory scheme. *Id.* A unanimous panel of the Second Circuit Court of Appeals affirmed the injunction. *Id.* The Supreme Court reversed the Second Circuit and held that New York's statutory scheme did not violate the First Amendment. *Id.* at 209.

New York's system of electing trial court judges is rather complex as compared to the Marion County statute. In a nutshell, since 1921 New York has employed a "delegate primary-convention" selection system where judicial candidates for the Supreme Court are selected by a convention of delegates elected by party members. *Id.* at 200. Plaintiffs alleged that New York's election law "burdened the rights of challengers seeking to run against candidates favored by the party leadership, and deprived voters and candidates of their rights to gain access to the ballot and to associate in choosing their party's candidates." *Id.* at 201. One of Plaintiffs' assertions was that "party loyalty in New York's judicial districts renders the general-election ballot 'uncompetitive.'" *Id.* at 207. Plaintiffs argued that "'one-party rule' demands that the First

---

[3] Common Cause Indiana is the Indiana affiliate of Common Cause, the Plaintiff in this matter. *See Compl.* at ¶ 6.

Amendment be used to impose additional competition in the nominee-selection process of the parties." *Id*. The Supreme Court rejected these arguments and stated that "[c]ompetitiveness may be of interest to the voters in the general election, and to the candidates who choose to run *against* the dominant party. "But we have held that those interests are well enough protected so long as all candidates have an adequate opportunity to appear on the general-election ballot." *Id*. at 207 (emphasis in original).

The Supreme Court went on to note that it had upheld petition-signature requirements for inclusion on the general election ballot of five percent of the eligible voters. *Id*. (citing *Jenness v. Fortson*, 403 U.S. 431, 442 (1971)). The Supreme Court has also upheld a petition-signature requirement of one percent of the vote in the State's primary. *Id*. (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 199 (1986)). The Court therefore held that New York's general-election balloting procedures for its trial court judges "easily pass[ed] muster." *Id*.

The Supreme Court further noted that "the First Amendment creates an open marketplace where ideas, most especially political ideas, may compete without government interference." *Id*. at 208 (citation omitted). "It does not call on the federal courts to manage the market by preventing too many buyers from settling upon a single product." *Id*. In dicta, the Court indicated that its opinion would not change under the scenario of two parties dominating and similarly stifling competing opinions. *Id*. at 209. Indeed, the Court remarked that the petition alternative changes the analysis. *Id*. at 210 (Kennedy, J. concurring in judgment). Justice Kennedy described the Plaintiffs' objections to the New York scheme as being "difficult for those who lack party connections or party backing to be chosen as a delegate or become a nominee for office." *Id*. And Justice Kennedy agreed that were the state-mandated and designed nominating convention the sole means to attain ballot access to the general election ballot there

15

would be considerable force, in his view, to the contention that the First Amendment prohibits a system with such rigidities and difficulties as the one in New York. *Id*.

Notwithstanding Justice Kennedy's concerns, because New York has a second mechanism in place to allow independent candidates to appear on the final election ballot, through the petition process, the First Amendment was not offended by New York's election framework. New York's petition process requires one who seeks to be a Supreme Court justice to obtain the lesser of (1) 5 percent of the number of votes last cast for Governor in the judicial district or (2) either 3,500 or 4,000 voters (depending on the district). *Id*. This petition process, the Court held, was not unreasonable. *Id*. In essence the Court held that barring a "patently exclusionary" petition process included as part of a state's election scheme allowing reasonable ballot access and participation by independent candidates and parties, the First Amendment will not be invoked to invalidate such otherwise valid schemes. *See id*. at 211. The Supreme Court was content to defer to the representative branches in these matters and absent blatant or patently exclusionary practices or statutory regimes adversely affecting the First Amendment rights of affected voters and candidates, such election systems should be upheld.

Moreover, at least one other federal court since the *Lopez Torres* decision has found that a plaintiff's claims almost identical to those of Plaintiff in this action, were non-cognizable and dismissed them pursuant to a 12(b)(6) motion. *See Dibbs v. Mazzarelli*, 2010 WL 3466920, No. 09-CV-5938 (S.D.N.Y. Aug. 30, 2010). A pro se plaintiff brought a § 1983 action to again challenge the New York statutory judicial election scheme alleging the scheme violated his First and Fourteenth Amendment rights by denying him, among other things, the opportunity to participate meaningfully in the election of judges. *Id*. at *1. Defendants included the state office of court administration, state attorney general, state Democratic Party, and state board of elections.

The United States District Court for the Southern District of New York dismissed the complaint for failure to state a claim. The court reasoned that plaintiff's First Amendment allegations were without merit and could not state a claim after the Supreme Court's decision in *Lopez Torres*. *Id*. at *2. Indeed, the district court flatly rejected the plaintiff's contention that a First Amendment challenge by a voter was not affected by *Lopez Torres*. "Against the procedural backdrop, the Supreme Court reversed the ruling of the Second Circuit Court of Appeals, and upheld the New York statutory elections scheme, without exception. *Id*. "The Court's holding that the New York election law did not violate the constitutional rights of voters was no less clear for being implicit." *Id*.

Plaintiff's First Amendment challenge to Indiana's statute for electing Marion County Superior Court judges is similarly foreclosed. Plaintiff already acknowledges in its Complaint that Indiana's petition process under Indiana Code Section 3-8-6-1 *et seq.,* has produced an eligible third party candidate for the office who appeared on the general election ballot in 2002.[4] *See Compl*. at ¶ 14. This is an explicit acknowledgement that Indiana's system works to allow independent candidates and parties the reasonable opportunity to attain ballot access and express their political will. The alleged fact that no other candidate has appeared since 2002 is irrelevant for First Amendment purposes for all the Constitution requires is a reasonable opportunity for a candidate's or a voter's views to be reflected on the general election ballot. *See generally Lopez Torres*, *supra*. Indiana Code Section 3-8-6-3 provides in its entirety:

> (a) A petition of nomination must be signed by the number of voters equal to two percent (2%) of the total vote cast at the last election for secretary of state in the election district that the candidate seeks to represent.
> (b) In determining the number of signatures required under this section, any fraction in excess of a whole number must be disregarded.

---

[4] In the 2002 General Election, Michael E. Caudill of the Libertarian Party appeared on the ballot for Marion County Superior Judge. He received a total of 15,749 votes. *See* 2002 Election Report-State of Indiana, available at http://www.in.gov/sos/elections/2921.htm, accessed on December 11, 2012.

Ind. Code § 3-8-6-3.

For example, were an independent judicial candidate to seek a seat on the Marion County Superior Court in the most recent election in November 2012, he or she would need to obtain approximately 4,251 valid signatures under the statute to qualify for the general election ballot.[5] As Justice Kennedy recognized in *Lopez Torres*, such a burden is not unreasonable and, indeed, such a requirement protects Indiana's important "interest in requiring some preliminary showing of a significant modicum of support before" including that person's name on the general election ballot. *See Jenness*, *supra*, 403 U.S. at 442.

Moreover, to the extent that Plaintiff complains about Indiana's ballot access statute, *see Compl*. at ¶ 14, Indiana's petition process for independent candidates and parties has been challenged and upheld by the Seventh Circuit and Southern District of Indiana. *See Hall v. Simcox*, 766 F.2d 1171, 1175 (7th Cir. 1985) (rejecting plaintiffs' First Amendment challenge against Indiana election officials and upholding the constitutionality of Indiana's petition signature requirement of 2 percent of the number of people who voted in the last election for secretary of state); *The Populist Party v. Orr*, 595 F. Supp. 760, 765-66 (S.D. Ind. 1984) (upholding Indiana's ballot access statute as reasonable by requiring a 2 percent signature threshold in order to be placed on general election ballot).

In sum, Plaintiff has pleaded itself out of court for failing to state a claim that is plausible on its face. While Plaintiff complains of not being able to cast a meaningful vote under Indiana's current judicial election framework, federal courts have rejected similar arguments and upheld statutory election regimes that accord reasonable ballot access to independent candidates, voters

---

[5] The last general election of the Indiana Secretary of State occurred in 2010. The total number of votes cast for Secretary of State in Marion County was 212,564 votes (includes votes cast for Democratic, Republican, and Libertarian party candidates). 4,251 valid signatures represent 2% of the votes cast for Secretary of State in the previous election in Marion County. *See* 2010 Election Report-State of Indiana, available at http://www.in.gov/sos/elections/2921.htm, accessed on December 11, 2012.

and parties alike.  The Supreme Court's decision in *Lopez Torres* ─ supported by subsequent federal court decisions like *Dibbs* ─ make it clear that Plaintiff's claims are without merit and do not state a claim.  Like the court in *Dibbs*, this Court should dismiss Plaintiff's Complaint with prejudice because amendment would be futile and waste scarce judicial resources.  As the Fourth Circuit so aptly put it, "[t]he First Amendment guarantees the right to participate in the political process.  It does not guarantee political success." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 960 (4th Cir. 1992).  Or put another way, "[w]hile the first amendment right to vote has been interpreted as guaranteeing an effective vote [], it has not been held to ensure that one's candidate is entitled to win election." *Orloski v. Davis*, 564 F. Supp. 526, 535 (M.D. Pa. 1983).

## IV.   Conclusion

For the above reasons, the Secretary respectfully moves the Court to grant her motion to dismiss against Plaintiff, to dismiss Plaintiff's Complaint with prejudice, and to grant all other relief deemed just and proper by the Court.

Respectfully submitted,

GREGORY F. ZOELLER
Attorney General of Indiana
Atty. No. 1958-98

Date:  December 20, 2012           By:    /s/  Dino L. Pollock
Dino L. Pollock, Atty. No. 28009-64
Kenneth L. Joel, Atty. No. 30271-49
Deputy Attorneys General
Office of the Indiana Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington St.
Indianapolis, IN 46204-2770
Phone: (317) 232-6291
Fax:    (317) 232-7979
Email:  Dino.Pollock@atg.in.gov

## **CERTIFICATE OF SERVICE**

       I hereby certify that on December 20, 2012, a copy of the foregoing *Defendant Secretary of State's Memorandum of Law in Support of Her Motion to Dismiss* was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Gavin M. Rose
ACLU OF INDIANA
grose@aclu-in.org

                                                 /s/ Dino L. Pollock
                                                Dino L. Pollock
                                                Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-6291
Fax: (317) 232-7979
Email: Dino.Pollock@atg.in.gov