UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA,          )<br>                                )<br>     Plaintiff,                 )<br>                                )<br>     v.                         )<br>                                )<br>INDIANA SECRETARY OF STATE, in her )<br>official capacity; THE INDIVIDUAL )<br>MEMBERS of the INDIANA ELECTION )<br>COMMISSION, in their official capacities; )<br>GOVERNOR of the STATE OF INDIANA, )<br>in his official capacity,       )<br>                                )<br>     Defendants.                )<br>                                )<br>                                ) | Case No. 1:12-cv-1603-RLY-DML |

**STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) and 12(b)(6)**

State Defendants, in their official capacities, by counsel, Deputy Attorneys General Dino L. Pollock and Kenneth L. Joel, respectfully submit this reply brief in support of their Motion to Dismiss.

### I.  Introduction

Plaintiff has raised several issues in its *Response in Opposition to Motion to Dismiss*, none of which provides this Court with an adequate basis to deny *State Defendants' Motion to Dismiss* the Amended Complaint. Plaintiff fails to meet its burden to establish that it meets the Article III and prudential standing requirements to properly invoke federal jurisdiction; similarly Plaintiff fails to meet its burden to prove that the *Ex Parte Young* fiction applies in this case to abrogate the State's Eleventh Amendment sovereign immunity; and Plaintiff utterly fails to distinguish why the Supreme Court's *Lopez Torres* decision should not be applied to foreclose its claim.

Plaintiff's strained attempts to provide a legal basis for the Amended Complaint to survive the Motion to Dismiss confuse rather than clarify the role of Indiana's various state and local officials in the administration of Marion County's judicial elections and do little to assist the Court with adjudicating this matter. This case is a ballot access case, pure and simple, and should be analyzed in that context alone. *Plaintiff's Response* is replete with citation to nonbinding case law from outside of the Seventh Circuit and case law that does not interpret Indiana's election law. As such, *Plaintiff's Response* raises issues that are illusory, such as its introduction of putative application of the *Monell* doctrine in this matter.

Glaringly, Plaintiff omits any analysis or even mention of a key, if not dispositive, statute which expressly commits the conduct and administration of Marion County's elections, including its judicial elections, to the Marion County Election Board. As the State Defendants' Brief adequately and already addresses most of the issues raised in Plaintiff's response, and in the interests of economy and assisting the Court's adjudication of this matter by providing much needed clarity, State Defendants will address only the most salient issues raised in *Plaintiff's Response*. In all other respects, State Defendants will rely on their brief in chief. The Marion County system for electing judges is constitutional and, thus, dismissal of the Amended Complaint alleging First Amendment[1] violations is not just proper but required.

## II. Article III Standing and Eleventh Amendment Immunity

As an initial matter, Plaintiff erroneously argues that standing and immunity analysis are "co-extensive with one another and need not be treated separately." *Plaintiff's Resp*. at 5. This

---

[1] State Defendants note that Plaintiff has raised a First Amendment challenge to a state statute but nowhere in its Amended Complaint or the Plaintiff's Response is there mentioned a contemporaneous assertion of a Fourteenth Amendment claim. The First Amendment has no independent force upon the states and it is only through the Due Process Clause of the Fourteenth Amendment that the First Amendment reaches state action. *See Gitlow v. People of State of New York*, 268 U.S. 652, 666 (1925). While it may be axiomatic, it is still worthy of mention that "The First Amendment, made applicable to state and local government by interpretation of the Fourteenth Amendment, prohibits a governmental entity from abridging the freedom of speech." *Comer v. Housing Authority of City of Gary, Ind.*, 615 F.Supp. 2d 785, 788 (N.D. Ind. 2009) (citing *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 826 (7th Cir. 1999).

is simply not correct and Plaintiff certainly detracts from the efficacy of that assertion when it equivocates that "[i]t *appears* . . . that these arguments are co-extensive with one another." *Id.* (emphasis supplied). The fact is there is no basis for such an assertion in Seventh Circuit case law. This is evident from the fact that not one case cited in support of the assertion is from the Supreme Court or the Seventh Circuit. *See generally Plaintiff's Resp.* at 6. While combining the analysis for both doctrines may provide "ease" and "economy" for Plaintiff, such rationale cannot conflate the two distinct doctrines nor permit short shrift of the independent analysis required by both. *See id.* at 7. The Seventh Circuit has never adopted an analysis or view combining the two — Plaintiff's cited federal case law to the contrary notwithstanding. In fact case law indicates that the Seventh Circuit continues to employ a separate and distinct analysis of standing and immunity doctrines. *See, e.g., Sierakowski v. Ryan*, 223 F.3d 440, 445 n.2 (7th Cir. 2000) (affirming the district court's dismissal of plaintiff's lawsuit on Article III standing grounds but declining to reach the issue of whether the Eleventh Amendment bars the suit because plaintiff lacked standing).

Such an approach is consistent with the Supreme Court's views on this matter. The Supreme Court has recognized that the two doctrines are not coextensive and that standing issues are to be addressed independently of immunity issues and indeed prioritized over immunity issues. *See Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) ("[w]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings, we have recognized that it is not coextensive with the limitations on judicial power in Article III.") (citations omitted). While Plaintiff cites to a 1999 Fifth Circuit case to support its assertion, see *Plaintiff's Resp.* at 6, a subsequent Fifth Circuit case clearly follows the Supreme Court's approach in *Calderon*. *See Cox v. City of Dallas, Tex.*, 256 F.3d 281, 303-04 (5th Cir. 2001) ("[t]he Supreme Court has also

3

stated that standing must be examined before the Eleventh Amendment.") (citing *Calderon*, 523 U.S. at 745).

Plaintiff's attempt to circumvent the independent analysis of both doctrines must fail as any conflation of the two doctrines or the respective analyses attendant to them would be improper and lead to confusion rather than clarity in the law. As the Supreme Court has noted, Article III standing requirements precede the Eleventh Amendment immunity analysis in terms of a hierarchy, if any. The one thing that both doctrines share is that they are jurisdictional and as such, they are threshold issues that federal courts should be addressed prior to reaching the merits of a decision. *See generally Calderon* and *Cox*, *supra*. Therefore the Court should reject Plaintiff's assertion that both standing and immunity doctrines may be analyzed and addressed together. While the doctrines may be "closely related" and the inquiries may indeed "overlap[]" at some point in the analysis, the Court should reject the invitation to substitute the analysis of one for the other as suggested by Plaintiff. In sum, if the Court rules that Plaintiff does not enjoy Article III standing, then it does not need to reach the question of whether immunity applies. On the other hand, should the Court determine that Plaintiff does meet Article III requirements; the Court would still need to then address the merits of State Defendants' immunity argument. One does not dispose of the other.

Most importantly, Plaintiff's arguments that State Defendants are proper parties to this action must fail as they cannot establish Article III standing on the causation and redressability prongs of standing analysis, and they have not demonstrated — and cannot demonstrate — that their alleged injury is somehow connected to the action or inaction of State Defendants bringing them within the purview of the *Ex Parte Young* exception to the State's asserted sovereign immunity. *See generally State's Brief in Support of Motion to Dismiss* at 3-14, 18-20.

Next, Plaintiff asserts that the State argues it "should be suing local officials rather than state officials." *See Plaintiff's Resp*. at 7. Plaintiff mischaracterizes the State's arguments here. State Defendants have merely pointed to the various pertinent statutory provisions which govern adjudication of the issues raised in Plaintiff's Amended Complaint. Plaintiff is the master of his complaint and the State Defendants' offer no opinion on whom Plaintiff should or should not sue. However, the bottom line is the Indiana Legislature has determined a rational and duly deliberated division of labor between state and local officials in administering and enforcing Indiana's election laws. Had the Legislature determined differently, the analysis and ensuing result of this action may very well be different. Plaintiff's attempts to ignore the plain language of the statutes are misplaced.

In fact, Plaintiff does not even attempt to address the pertinent statutory provisions respecting local officials' responsibilities as their brief is completely bereft of any treatment and provides only cryptic reference or acknowledgement of relevant provisions. *See, e.g., Plaintiff's Resp*. at 19 (in an apparent concession, Plaintiff states, "[e]ven though much of the electoral framework may transpire at the local level . . . ."); *see also Plaintiff's Resp*. at 13-14 ("even if primarily enforced at the local level . . . ."). In actuality, it's not just "much," of the responsibility is administered at the local level, *all* of the *substantive* duties respecting the conduct, administration, and enforcement of Marion County judicial elections and laws transpires at the local level, which is ultimately the responsibility of the county election board under Indiana law[2]. No amount of citation to authority interpreting other states' statutes respecting the duties of their state officials can change the reality that under Indiana law, any alleged injury to Plaintiff is not caused by State Defendants and cannot be redressed by them.

---

[2] Plaintiff erroneously asserts that the Secretary's Election Division is responsible for printing the ballots for elections in Marion County. This is simply incorrect. The Election Division no longer prints any ballots in Marion County or any other county in the state. Ballot printing is the sole responsibility of the county election boards. *See* Ind. Code § 3-6-5-14(a)(3).

5

Additionally, none of the ministerial duties performed by State Defendants, even if the Court granted Plaintiff's requested injunctive relief, would have any real effect on addressing Plaintiff's claims. State Defendants simply cannot deliver what Plaintiff ultimately requests yet Plaintiff is insistent upon obtaining blood from the proverbial turnip. The Indiana Supreme Court has long held that the Legislature has the authority to delegate various duties and responsibilities amongst several governmental actors and has chosen to assign the responsibility of administering Indiana's election laws within the counties to county election boards, pure and simple. *See Jourdan v. City of Evansville*, 72 N.E. 544, 545, 163 Ind. 512 (Ind. 1904) (holding "[t]here is nothing in the [Indiana] Constitution prohibiting the Legislature from fixing the jurisdiction of municipal corporations, and the judiciary cannot supplant the judgment of the Legislature with its own."). The power to conduct elections is a police power "vested in the sovereign, and may be delegated to the instrumentality of government, such as municipal corporations are." *See Jourdan*, 72 N.E. at 545.

As an example of its inadequate and incomplete treatment of the prescribed division of labor between state and local officials, Plaintiff cited to Indiana Code section 3-6-4.1-14(a)(1) and (4) for the proposition that the Indiana Election Commission is obligated to advise and supervise local election officials and administer Indiana election laws. On first blush, they appear to be correct. Except that the Legislature was unambiguous when in subsection (b) of the same statute it provided that: "[t]his section does not divest a county election board of any powers and duties imposed on the board in IC 3-6-5, except that if there is a deadlock on the county election board, the county election board shall submit the question to the commission for final determination." Ind. Code § 3-6-4.1-14(b).

Notice that the foregoing statutory language references IC 3-6-5. Plaintiff wholly failed to mention ─ let alone address ─ the provisions of that statute in their response. The omission

6

can be no mere oversight. When it comes to the issues of standing and immunity, Plaintiff has no answer for the provisions under IC 3-6-5 and specifically IC 3-6-5-14 which is discussed in the State Defendants' brief but which has been omitted from any discussion in the Plaintiff's response. *See State's Brief in Support* at p. 6. If the provisions of IC 3-6-5-14 are to mean anything, they must mean that the county election board is responsible for the administration of election laws within Marion County and the conduct of all elections within Marion County, including ones for judicial office.

If the Court were to accept Plaintiff's argument that State Defendants are responsible for administering the challenged statute in Marion County, it would by implication render IC 3-6-5-14 a nullity and that cannot be so. The State Defendants' responsibilities under Indiana law with respect to Marion County judicial elections are not coextensive and as such, Plaintiff's protestations to the contrary are simply without merit. What is abundantly clear is that Plaintiff has chosen to ignore the significance of IC 3-6-5-14, which read in harmony with IC 3-6-4.1-14, provides the Court with sufficient grounds to determine whether the Indiana Election Commission or the Secretary of State administer the election laws in Marion County. Indeed, this Court has held in numerous cases that state officials bore no direct responsibility for enforcing election laws and that local officials are responsible for oversight of elections in Marion County. *Cf. Indiana Democratic Party v. Rokita*, 458 F.Supp. 2d 775, 785-86 (S.D. Ind. 2006) (in a challenge to the voter identification law, the court stated, "The Indiana Election Division provides advice and instruction to county election officials . . . . The Division has no direct role in enforcing election laws, nor does the Secretary of State.").

To further buttress State Defendants' position that they are improper parties, the Court in *Rokita* noted that the "*Election Division's manuals and training, however, are advisory only, as the administration of any election and its oversight is the responsibility of the County Election*

7

*Board . . . ." Id*. at 786. (citing Ind. Code § 3-6-5-14) (emphasis supplied). The Court further noted that, *"[c]ounty election boards can take, and have taken positions about election laws and procedures contrary to the position advanced by the State Election Division." Id*. (emphasis supplied). Numerous cases have noted that the Marion County Election Board is responsible for all elections within Marion County, the *Rokita* case included. *See id*. at 802. ("defendants The Marion County Election Board is . . . the entity that is responsible for the oversight of elections in Marion County, Indiana."); *Marion County Democratic Party v. Marion County Election Board*, No. IP 01-1963-C-T/K, 2002 WL 1354717 at *1 (S.D. Ind. May 9, 2002) ("[a]mong the duties of the [Marion County] Election Board are to conduct all elections, administer the election laws within Marion County, and prepare all ballots to be used in elections.").

State Defendants play no substantive role in the conduct or administration of election laws in Marion County and the Amended Complaint should be dismissed because Plaintiff does not have Article III standing because the alleged injury is not caused by State Defendants and cannot be redressed by them. Additionally and separately, the State's Eleventh Amendment immunity precludes this action under the *Ex Parte Young* exception because the alleged injury to Plaintiff is not traceable to the action or inaction of any of the State Defendants.

### III.     *Monell* Doctrine Inapplicable

What is puzzling is Plaintiff's assertion that it is "most likely prohibited by controlling case law from suing local officials." *Plaintiff's Resp*. at 7. Plaintiff arrives at this conclusion by claiming that the Supreme Court's holding in *Monell v. Dep't of Soc. Srvcs*., 436 U.S. 658 (1978), somehow precludes it from suing local officials. *See id*. This argument is a red herring. Surely Plaintiff must be aware that there are several cases that have been litigated in the Southern District of Indiana, *post-Monell*, in which local election officials have been proper defendants in federal court on causes of action that challenge a state election law. Moreover, Plaintiff has not

named any local official or agency as a party defendant in this action, and the Court has not ordered the joinder of one, and as such should reject outright Plaintiff's invitation to adjudicate an issue not properly before the Court.

The Supreme Court has articulated the *Monell* doctrine to hold a municipality liable under Section 1983 only for its own violations of federal law. As such, the Supreme Court has defined a municipality's "own" violation to include the implementation or execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . ." *Los Angeles County, Cal. v. Humphries*, 131 S. Ct. 447, 452 (2010) (quotation and citation omitted). "The Court has also included the terms 'usage' and 'practice' as customs for which liability is appropriate." *Id*. (citation omitted). The Supreme Court explained that the entire list of types of municipal action or omission would be referred to shorthand as "policy or custom." *Id*. (citation omitted). Here, the hypothetical county election board would be alleged to have violated Plaintiff's First Amendment rights by enforcing Indiana Code section 33-33-49-13. "A municipality may be held liable 'when execution of a government's *policy or custom* . . . inflicts the injury.'" *Id*. (emphasis in original).

In sum, "whether an action or omission is a municipality's 'own' has to do with the nature of the action or omission, not with the nature of the relief that is later sought in court." *Id*. at 453. Since it is the responsibility of the local election board to conduct all elections and administer the election laws within their jurisdictions, when they conduct any election, including judicial elections, the nature of their action or omission is their own and not the action or omission of State Defendants. If the Court does decide to address the *Monell* issue, the case of *Libertarian Party of Indiana v. Marion County Board of Voter Registration*, 778 F. Supp. 1458 (S.D. Ind. 1991), is a perfect example of the doctrine neither being applicable nor applied.

9

In that case, plaintiffs brought a Section 1983 action seeking declaratory and injunctive relief against various county and state officials regarding access to voter registration lists in Marion County. *Id*. at 1459-60. The State defendants in that case included the Indiana State Election Board, and the Governor as an individual member of the State Election Board. *Id*. at 1460. The State defendants in the case filed a motion to dismiss asserting Eleventh Amendment immunity and Article III standing grounds. *Id*. at 1461. The court agreed with State defendants and dismissed the state and state election board on immunity grounds. *Id*. Noting that the element of redressability was an Article III minimum for standing, the court also dismissed the individual State defendants on standing grounds because plaintiffs did not allege an injury "that is likely to be redressed by a favorable decision." *Id*. In doing so, the court reasoned that "[t]he assertion that the state enacted IC 3-7-7-10 is irrelevant for purposes of determining whether a successful lawsuit will redress the plaintiff's grievances." *Id*.

The court rejected a similar argument made by Plaintiff in this case, that the Election Commission's supervisory powers over the county officials, was decisive on the issue of redressability. In fact, the court reasoned that the State Election Board's supervisory authority "means little in light of the fact that the Indiana State Election Board can neither discipline nor remove members of the Voter Registration Board." The court went on to hold that "[s]ince the plaintiffs have not shown that any of their alleged injuries are likely to be redressed by the presence of the remaining State Defendants, and since it appears that the plaintiffs would be able to obtain all of their requested relief from the County Defendants, the motion to dismiss is also granted with respect to the remaining State Defendants . . . ." *Id*.

Another case in the Southern District of Indiana cited in State Defendants' brief in chief, *Marion County Democratic Party v. Marion County Election Board*, 2002 WL 1354717 (S.D. Ind. May 9, 2002), further illustrates the point. Coincidentally, that case involved the selection

of Marion Superior judges and noted that "Marion County has a unique system for electing candidates to the superior court." *Id*. at *1. Plaintiff in that case sued the Marion County Election Board under Section 1983 alleging, *inter alia*, violations of its First Amendment associational rights and seeking declaratory and injunctive relief against the county election board. *Id*. at *2. Among its duties, the court found that the Marion County Election Board was responsible to "conduct all elections, administer the election laws within Marion County, and prepare all ballots to be used in elections." *Id*. Plaintiff political party's Amended Complaint alleged, *inter alia*, "that the Election Board's failure and refusal to adopt the Eicholtz Resolution [had] impermissibly burdened the rights of those Democratic Party members who will be nominated candidates for Marion Superior Court judgeships in the 2002 general election . . . and impermissibly denied the Democratic Party its associational rights in violation of the First Amendment . . . ." *Id*. The Eicholz Resolution would have allowed the Marion Superior judges to be included on the ballot for straight party ticket by pulling the party's lever. *Id*. The Marion County Election Board refused to adopt the resolution and thus Marion Superior judges were not included on the straight party ticket lever. *Id*.

The Marion County Election did not raise a *Monell* defense in its motion to dismiss the First Amendment and Fourteenth Amendment claims, even though the Election Board was administering and acting pursuant to a state election law and not a local ordinance. *See id*. at *1 (citing I.C.§ 3-11-12-29(c); I.C. § 3-11-2-12; I.C. § 3-11-2-12.5); *see also Marion County Committee of Indiana Democratic Party v. Marion County Election Board*, 2000 WL 1206740 (S.D. Ind. Aug. 3, 2000) (in a Section 1983 action seeking a preliminary injunction for alleged First and Fourteenth Amendment violations regarding ballot access, county election board was a proper party because it was charged with preparing the general election ballot for use in Marion County); *cf. Dillard v. Marion County Election Board*, 2005 WL 1939910 (S.D. Ind. April 28,

2005) (in a 42 U.S.C. Section 1973 claim seeking declaratory and injunctive relief for alleged Fourteenth Amendment violations by defendant county election board, the Court refused to dismiss county election board as a proper defendant because they stood to be substantially impacted by the relief sought even though the legislative body of Lawrence was responsible for the alleged harm).

Instead the Election Board argued that Plaintiff failed to state a claim upon which relief may be granted. *Id*. at *10. The court rejected Plaintiff's First Amendment association rights arguments and, relying on the reasoning in the Fourth Circuit's decision in *Republican Party of North Carolina v. Martin*, 980 F.2d 943 (4th Cir. 1992), concluded that the plaintiff failed to "identify any facts it prove to establish, that Democrats in Marion County cannot run for superior court judgeships, cannot vote for the candidates of their choice, and cannot associate together in support of their chosen candidates." *Id*. at *11.

The court granted the Election Board's motion to dismiss the First Amendment claim. *Id*. The court noted that First Amendment "protects the right to cast an effective vote by prohibiting restrictions on ballot access that impair the ability of citizens to express their political preferences, or that limit the opportunity for citizens to unite in support of the candidate of their choice." *Id*. (quoting *Martin*, 980 F.2d at 960). The Fourth Circuit went on to conclude that North Carolina's method of choosing superior court judges did not violate the First Amendment. *Id*.

When the Southern District of Indiana observed that the Fourth Circuit found no First Amendment violation of North Carolina's election method for its superior court judges and applied the same analysis to Marion County's election method, it flatly held, "'[s]o, too, here[3]." *Id*. Thus even though the court did not adjudicate a direct constitutional challenge to Indiana

---

[3] In refusing to exercise supplemental jurisdiction on the Plaintiff's state law claim, the court noted in dicta that "the state law issue presented is of importance only to Marion County, *as it is alleged to be the only county which uses the election system for superior court judges that is challenged in this case*." *Id*. at *15. (emphasis supplied).

Code section 33-33-49-13, it certainly by implication, if not expressly held that the Marion County Election Board is the proper party defendant to an action challenging a state election law administered locally, and more importantly, it held that the manner in which Marion County superior court judges are chosen does not violate the First Amendment. *Monell* functions as no barrier to this Court finding that local officials would be subject to a Section 1983 action alleging First Amendment violations of the challenged statute.

### IV.   Applicability of the Supreme Court's *Lopez Torres* Decision

Plaintiff argues that this case is not barred by the Supreme Court's decision in *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008), ostensibly because *Lopez Torres* "arose as a challenge to the nomination of judges by party convention [and] has no applicability to the present circumstances." *Plaintiff's Resp*. at 23. Such a statement merely elevates form over substance. It should be noted at the outset that while the Marion County system for electing superior court judges may be different, at least in Indiana, the New York system validated by the Supreme Court in *Lopez Torres* was also different from the election of trial judges around the country and even different from the election of other judicial officers in New York. Plaintiffs in *Lopez Torres* included the New York branch of Common Cause. Defendants in the case included the New York State Board of Elections.[4]

---

[4] Plaintiff asserts that State Defendants "reliance on *Lopez-Torres* is somewhat at odds with its standing and immunity arguments" because the state defendant in that case "*appears* to have been named as a party as a result of its general authority and responsibility for the execution and enforcement of all laws relating to the elective franchise." (citation omitted) (emphasis supplied). Plaintiff's equivocal language is understandable but closer look reveals why the Supreme Court was clear that the state election board was responsible for enforcing that particular statute. In discussing the parties to the suit, the Court noted that, "the New York Board of Elections [] is responsible for administering and enforcing the New York election law." *Lopez Torres*, 552 U.S. at 201 (citing §§ 3-102 and 3-104 of the New York Election Code).

The New York Legislature has vested the State Election Board with the powers to administer and enforce New York election laws and has not committed such powers to local election boards. Section 3-104 of the New York Election Code provides in pertinent part: "[t]he state board of elections shall have jurisdiction of, and be responsible for, the execution and enforcement of the provisions of article fourteen of this chapter and the other statutes governing

After a survey of how trial court judges are elected or selected around the country, here's what the Eastern District of New York said about New York's system: "The convention system at the heart of this case not only distinguishes New York from every other state, it also distinguishes the office of Supreme Court justice in New York from every other elective judicial office in the state. All other elected judges in New York state are nominated in direct primary election, rather than in a judicial convention." *See Lopez Torres v. New York State Bd. of Elections*, 411 F. Supp. 2d 212, 215-16 (E.D. N.Y. 2006), *aff'd*, 462 F.3d 161 (2d Cir. 2006), *rev'd*, 552 U.S. 196 (2008). The court's commentary suggests that while the Marion County is may be different, it is at most as different as the one in New York, and is arguably quite less different than the system validated in New York. But differences of the statutory process are not what is dispositive in a First Amendment challenge.

The Marion County judicial election process is not a restriction at all on voters being able to cast a meaningful vote in the general election. The statute itself is contained in the portion of the Indiana Code dealing with courts and court officers, Title 33. Article 33 of the title organizes the court system in each of the 92 counties. Notably, Indiana Code section 33-33-49-13 is not contained in Title 3 of the Indiana Code which regulates elections. Thus the the statute speaks to how the Marion Superior Court will be constituted and how the judges will be elected. It does not facially place any restriction whatsoever on voting or ballot access. In fact it provides for ballot access for independent candidates by incorporating reference to Indiana Code section 3-8-

---

campaigns, elections, and related procedures." This is factually distinguished from the Indiana laws that commit general enforcement of the Indiana election laws to the Indiana Election Commission but specific enforcement of state election laws within individual counties to county election boards. *See* Ind. Code §§ 3-6-4.1-14(a) and 3-6-5-14. The New York statute also permits the State Election Board to "visit boards of elections, examine their procedures and records and direct that any such procedures be modified in any manner consistent with the provisions of this chapter." *See* N.Y. Elec. Law Ann. § 3-102(2) (2007). This further distinguishes the Indiana statute regarding the Commission's powers from its counterpart in New York as its powers with respect to the county election boards are only advisory. *See generally State Defendants' Brief in Support* at 8-9; *State Defendants' Reply Br.*, *infra*, at 5-8. For purposes of the standing and immunity arguments, it is a distinction with a difference further supporting dismissal on jurisdictional grounds.

6. And quite frankly, that is all that the First Amendment requires in these cases, is reasonable ballot access to allow a voter's associational rights to cast a meaningful vote to be vindicated.

Plaintiff beats the drum that State Defendants did not utilize the *Burdick*[5] sliding-scale balancing test in their brief in chief. The drum would have to beat just as loudly or more in order to understand the Supreme Court refusing to use the balancing test in *Lopez Torres*, an opinion that held — unanimously and on the merits — that New York's system did not violate the First Amendment rights of candidates or voters for that matter. The *Burdick* test was never mentioned in Justice Scalia's opinion for the Court, even though the plaintiff in that case challenged a New York state election law[6]. It certainly was not an oversight by Justice Scalia, as he was a member of the majority in Justice White's opinion for the Court in the *Burdick* decision.

The *Burdick* test is derived from the Supreme Court's decision in *Anderson v. Celebrezze*, 460 U.S. 780 (1983). Justice Scalia cites *Anderson* in the Court's opinion but only in a string citation explaining the Court's prior cases invalidating ballot access requirements. *See Lopez Torres*, 552 U.S. at 205. The Supreme Court did not utilize or apply the *Burdick* test in *Lopez Torres*, and as such, the Court is not bound to utilize the *Burdick* test when analyzing the challenge presented in this case. Moreover, the Court would not need to reach the issue if this action is disposed of on jurisdictional grounds as argued by State Defendants.

The Court characterized the plaintiffs' real complaint as not that "they cannot vote in the election for delegates, nor even that they cannot run in that election, but that the convention process that follows the delegate election does not give them a realistic chance to secure the party's nomination." *Id*. The Court noted that past cases where the Court has invalidated ballot-access requirements have focused on the requirements themselves, and not on the manner in

---

[5] *Burdick v. Takushi*, 504 U.S. 428 (1992).
[6] Plaintiffs in *Lopez Torres* challenged the validity of N.Y. Elec. Law Ann. § 6-106 (West 2007), which provides: "Party nominations for the office of justice of the supreme court shall be made by the judicial district convention." *Lopez Torres*, 552 U.S. at 200.

which political actors function under those requirements." *Id*. (citations omitted). The Court also noted the plaintiffs' complaint that the general election was rendered uncompetitive due to the entrenchment of "one-party" rule and that the First Amendment should be "used to impose additional competition in the nominee-selection process of the parties." *Id*. at 207. These are arguments that are remarkably similar to the complaints made by Plaintiff in this action regarding the Marion County judicial election process.

The Court rejected those arguments and stated that, "[c]ompetitiveness may be of interest to the voters in the general election, and to the candidates who choose to run *against* the dominant party." *Id*. (emphasis in original). "But we have held that those interests are well enough protected so long as all candidates have an adequate opportunity to appear on the general-election ballot." *Id*. Moreover, the Court noted that, "no court has ever made 'one-party entrenchment' a basis for interfering with the candidate-selection processes of a party." *Id*. at 208. (citation omitted). The Court reasoned that "one-party rule is entrenched [] may be (and usually is) [because] voters approve of the positions and candidates that the party regularly puts forward." *Id*. The Court held that, "the First Amendment creates an open marketplace where ideas, most especially political ideas, may compete without government interference." *Id*. (citation omitted). "It does not call on the federal courts to manage the market by preventing too many buyers from settling upon a single product." *Id*.

Just as the *Lopez Torres* plaintiffs complained about the dominance of one party and the lack of competitiveness of the general election, so too does the Plaintiff in this action complain about the dominance of the two major political parties and a lack of competitiveness at the general election allegedly depriving it of the right to cast a meaningful vote. As the Supreme Court rejected those notions in *Lopez Torres*, the Court should reject them in respect to Plaintiff's challenge to the Marion County judicial election process. Plaintiff has not raised a

challenge to the primary system and neither has the Plaintiff raised a challenge to Indiana's already constitutionally upheld ballot access statute[7].

In fact, the challenged statute does not unreasonably or unconstitutionally limit minor political parties or independent candidates from achieving ballot access and fielding candidates for Marion Superior Court judicial vacancies. The statute does not make any mention of the two major political parties and it is written in permissive and not mandatory terms. Indiana Code section 33-33-49-13 provides in pertinent part: "a political party *may* nominate *not more than* . . . ." (emphasis supplied) Nothing in the statute requires a political party to field a full slate of candidates for judicial office and nothing in the statute prohibits more parties other than the two major political parties from fielding a slate of candidates as well. Minor political parties need only qualify by satisfying the requirements to hold a primary, and independent candidates need only qualify for ballot access under Indiana Code section 3-8-6. *See* Ind. Code. § 3-10-1-2 (requiring political parties to hold primaries); *See also State Defendants' Brief in Support* at 24-25. The Supreme Court has held on several occasions, most recently in *Lopez Torres*, that reasonable ballot access is all that the First Amendment requires to effect a voter's right to a meaningful vote. Indiana's election process for Marion County Superior judges passes constitutional muster and should be upheld.

Make no mistake, this is a ballot access case, and the Supreme Court's decision is its latest pronouncement on the matter[8] and the fact that Plaintiff complains of two-party dominance in Marion County is of no consequence, at least according to the Supreme Court. The Court opined that it would not make a bit of difference when it noted, "[d]oes not the dominance of two parties similarly stifle competing opinions? Once again, we decline to enter the morass." So,

---

[7] *See State Defendants' Brief in Support* at 25-26 (discussing challenges to Indiana's ballot access and petition signature requirements).
[8] The Supreme Court recently denied certiorari in a similar case to Plaintiff's. In its *Brief in Support*, State Defendants also cited the case of *Dibbs v. Mazzarelli*, 2010 WL 3466920 (S.D. N.Y. Aug. 30, 2010), *aff'd*, 470 Fed. Appx. 34, 35 (2d Cir. 2012), *cert. denied*, No. 12-792, March 4, 2013.

too, should this Court decline to enter the morass of Plaintiff's challenge to the Marion County judicial election statutory election process.

## Conclusion

Plaintiff has failed to articulate a valid basis under both standing and immunity analyses for the Court to exercise proper jurisdiction over this action and on that basis alone, the Amended Complaint should be dismissed, with prejudice. Additionally, the Amended Complaint fails to state a claim upon which relief may be granted under the Supreme Court's *Lopez Torres* decision. Should the Court decide that it has jurisdiction in this case, the claims by Plaintiff are not legally sufficient to withstand a motion to dismiss and must be dismissed.

Respectfully submitted,

GREGORY F. ZOELLER
Attorney General of Indiana
Atty. No. 1958-98

Date: March 18, 2013        By:    /s/ Dino L. Pollock
Dino L. Pollock, Atty. No. 28009-64
Kenneth L. Joel, Atty. No. 30271-49
Deputy Attorneys General
Office of the Indiana Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington St.
Indianapolis, IN 46204-2770
Phone: (317) 232-6291
Fax:    (317) 232-7979
Email: Dino.Pollock@atg.in.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2013, a copy of the foregoing *State Defendants' Reply Brief in Support of Their Motion to Dismiss* was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Gavin M. Rose
ACLU OF INDIANA
grose@aclu-in.org

                                       /s/ Dino L. Pollock
                                       Dino L. Pollock
                                       Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-6291
Fax: (317) 232-7979
Email: Dino.Pollock@atg.in.gov

Distribution list attached.

Copies to:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Gavin M. Rose
ACLU OF INDIANA
grose@aclu-in.org

Kenneth L. Joel
Deputy Attorney General
Kenneth.Joel@atg.in.gov

Dino L. Pollock
Deputy Attorney General
Dino.Pollock@atg.in.gov