UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA,        ) | |
|     Plaintiff,                              ) | |
| -vs-                                                        ) | Case No. 1:12-cv-1603 RLY-DML |
| INDIANA SECRETARY OF STATE, et al.,  ) | |
|     Defendants.                          ) | |

REPLY TO DEFENDANTS' RESPONSE TO MOTION TO INTERVENE

Introduction

Defendants oppose Christopher K. Starkey's ("Starkey") Motion To Intervene ("Motion") because of its belief that (1) the Motion is not timely and (2) Common Cause Indiana ("Common Cause") protects Starkey's interests. Starkey admits that if either of these is true the Court should deny the Motion.[1] However, neither is.

The main consideration with regard to timeliness is prejudice, either for the proposed intervenor or the parties. While the prejudice to the parties is slight, to Starkey it could be great if he is not allowed to intervene and hence file for immediate injunctive relief.

Common Cause does not adequately represent Starkey's interests because it has no particular interest in ensuring that any decision of this Court will apply to the 2014 election. Starkey does, and intends to file for an appropriate preliminary injunction.

This is proper. This case is not some purely intellectual exercise, but a civil rights case affecting the rights of all Marion County voters, including Starkey. He has every right to do all in his power to ensure that this Court's decision does apply to the 2014 election.

---

[1] Common Cause also opposes the Motion based on its belief that the Court will resolve it in time for the ruling to apply to the general election in 2014. Starkey did not file a reply; he relies on his initial brief.

Legal Memorandum

A. Starkey's Motion was timely.

Defendants contend that Starkey has failed to meet the timeliness requirement ECF 52, p. 2. They contend that the Motion was 'woefully late.' Id. They cite *Sokaogon Chippewa Community v. Babbitt,* 214 F.3d 941, 945 (7th Cir. 2000) for a four part test on timeliness.[2]

Starkey stands by his contention that he had no reason to seek to intervene until Common Cause informed him that it would not be filing for any preliminary injunctive relief. ECF 47, p. 4. He then filed within thirty days of finding this out.

Defendants contend that Starkey wants the Court to rewrite I.C. § 33-33-49-13 in time for the November 2014 election. ECF 52, p. 3. This seems a bit unfair. The phrase preceding this was to have the statute declared unconstitutional; this is what Starkey seeks. He wants to ensure that it is done in time for the 2014 election.

Starkey does not want to 'derail' anything about this case, contrary to defendants' assertions. ECF 52, p. 4. Starkey is not and will not be seeking an injunction to enjoin the elections. This is a really radical solution, and one less intrusive is available. Namely just have all eleven Democratic candidates listed. This is a provisional solution; if the statute is upheld the Democratic candidates finishing outside the top eight[3] would not be considered for the general election.

Defendants also contend that such an injunction would 'interrupt[] and delay[] the current briefing schedule.' ECF 52, p. 5. This does not follow. Starkey has already written that he does not intend to do so, and will not be filing any separate summary judgment motion. ECF 47, p. 5.

---

[2] Starkey cited another case, *Clark*, ECF 47, p. 4, which had a slightly different four part test.
[3] Starkey finished 11th.

Allowing Starkey to intervene will certainly result in additional filings. If it were not so, there would be no reason for him to intervene. Defendants seem to equate any added legal work with undue prejudice. ECF 52, pp. 4-5.

Defendants also try to paint Starkey as a marginal candidate, pointing out that he only received 3.41% of the vote. ECF 52, p. 6. This misrepresents two points. One, it leaves the impression that the voters were only selecting one out of eleven. Actually they were selecting eight, and the candidate receiving the most votes had 12.1% of the vote. The candidate who came in eighth, in other words, the last qualifier as the law currently stands, received 9.30% of the vote. ECF 60-2, p. 5. Two, Starkey's legal position has always been that the top sixteen in the primary advance, not the top eight, and hence there was no reason for him to campaign. He raised no money for the election; he spent no money on the election. Defendants' use of this statistic in isolation is meaningless.

Defendants also cite *Jenness v. Fortson,* 403 U.S. 431, 442 (1971) for the proposition that somehow Starkey does not deserve to be on the ballot in November because he, "failed to muster a significant modicum of support through the primary." ECF 52, p. 6. *Jenness* in part involved the validity of a Georgia statute imposing differing requirements on those candidates whose parties had not received 5% of the vote, and requiring signatures to appear on the ballot, and imposing different requirements on parties receiving more. There is no indication that the contested offices were for more than a single office, as opposed to the offices at question, being the top eight. Again, citing this case in isolation is meaningless.

Since Defendants have brought up numbers, Starkey will bring up other numbers. In the 2012 Marion County judicial general election, the lowest polling Democrat received 183,069

votes, and the highest polling Republican received 121,741 votes.[4] One could take the position that these results indicate that the voters ranked the candidates in order of ability and the Democrats were considered to be 1 – 8 in ability, and the Republicans 9 – 16. Starkey considers it more reasonable to conclude that the Marion County voters are ready to elect more than eight Democrats to the sixteen available positions. He believes they should at least be given the opportunity to do so. Starkey wants to intervene to ensure this happens.

Defendants also believe that Starkey's claim as a candidate differs from Common Cause's as voters. Starkey is also making a claim as a voter. Defendants do not write about how Starkey's claim as a candidate differs. This would potentially be an added way to find it unconstitutional, but it would not deter Common Cause's overall attack on behalf of voters, for which it has a pending summary judgment motion.

B. Starkey's interests are not protected by Common Cause.

Defendants state that since Starkey is relying on Common Cause's summary judgment materials that it must adequately represent his interests. ECF 52, p. 6. However, this is not so.

Common Cause believes the case will be resolved in time for the 2014 election. ECF 50, p. 1. It writes this with no citation. Common Cause does not dispute that it does not intend to file for any injunctive relief to ensure that the case will be resolved in time for the 2014 election. It does not dispute Starkey's statement in his brief supporting the Motion that, "…Common Cause has stated that it does not intend to take any steps to ensure that any decision in its favor will apply to the 2014 election. It has not applied for any preliminary injunctive relief, and on 8 April 2014 it advised Starkey that it had no plans to seek any such relief."

---

[4] This is as per the Indiana Secretary of State's website:
http://www.in.gov/apps/sos/election/general/general2012?page=office&countyID=-1&officeID=12&districtID=-1&candidate=

Common Cause's response did not include a statement that it would everything in its power to ensure this case is resolved in time to be applied to the 2014 election. It believes it will be. Starkey is less confident that this will be so. Monday, 6 October 2014 is the start of early voting for the election Tuesday, 4 November 2014. Likely if it is not resolved by then it will be too late to apply to this year's general election. That is why Starkey, if allowed to intervene, will file for appropriate preliminary injunctive relief.

Defendants believe that Starkey's remedy if he believes Common Cause is inadequately representing his interest, is to file his own lawsuit. ECF 52, p. 7. Such a lawsuit would again contend that the same challenged statute in this case was unconstitutional. It hardly requires a citation to authority to state what a waste of judicial resources it would be for there to be another lawsuit to determine the constitutionality of a statute when this case regards the same matter, along with the possibility of a conflicting ruling.

C. Civil Rights cases potentially alter the legal rights of persons.

Finally, Defendants close with, "…this litigation cannot and should not provide [Starkey] with the vehicle he wants to obtain the relief he desires." ECF 52, p. 7.

Why not? Common Cause has attacked I.C. § 33-33-49-13 as unconstitutional. This case is not merely an academic exercise. It will affect the rights of all active Marion County voters, who number 645,394. ECF 60-2, p. 15. This attack particularly affects Starkey since he, besides being a Marion County voter, is also a candidate for judge.

Starkey, in his brief in support of his Motion, cited two cases where intervention was allowed so that others could obtain relief under the cases filed. ECF 47, pp. 8-9.

White and Hispanic officers had a non-speculative interest in the enforcement of an underlying civil rights action, as otherwise they had no voice in racial preferences in promotion

and hiring. To assert these interests the circuit court reversed the district court's denial of their motion to intervene in a lawsuit filed by black officers to remedy racial discrimination. *Bridgeport Guardians, Inc. v. Delmonte,* 602 F.3d 469 (2nd Cir. 2010). In that case the intervenors sought to appear in the case twenty-five years after the judgment had been entered. They wanted to change the relief that court had entered in the black officers' favor, essentially to lessen this relief because the intervenors contended they were harmed by it. They sought to intervene because they had a real interest in that court's order.

A group of black and Hispanic students, after not being allowed to intervene by right by the district court in a lawsuit brought by a white regarding law school admissions, obtained a reversal and the right to intervene. *Grutter v. Bollinger,* 188 F.3d 394 (6th Cir. 1999). In *Grutter*, the intervenors were seeking to intervene as defendants. They sought to intervene because they had a real interest in the affirmative action policies of the school, not because they were offended on some purely intellectual level.

Intervenors by definition do not start the lawsuit. They at some point during the litigation recognize that they have an interest in the lawsuit and petition to become a party. This happens in civil rights lawsuits, such as *Bridgeport, Grutter,* and the case at bar.

### Conclusion

Wherefore, potential Intervenor Christopher K. Starkey requests that he be allowed to intervene as a plaintiff, along with all other just and proper relief in the premises.

/s/Christopher K. Starkey
Christopher K. Starkey
Potential Intervenor

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above has been served upon all counsel of record by the Court's ECF system on 5 June 2014.

                                                  /s/Christopher K. Starkey
                                                  Christopher K. Starkey

Christopher K. Starkey, Atty No. 11757-49
P.O. Box 39108
Indianapolis, Indiana 46239
Phone (317) 550-7608