UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 1:12-cv-01603-RLY-DML |
| | ) |
| INDIANA SECRETARY OF STATE, in her official capacity, INDIVIDUAL MEMBERS OF THE INDIANA ELECTION COMMISSION, in their official capacities; and GOVERNOR OF THE STATE OF INDIANA, in his official capacity, | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

In Marion County, candidates seeking a judgeship on the Marion Superior Court are elected pursuant to the method established by the Indiana legislature and codified at Indiana Code § 33-33-49-13(b) (or "the Statute"). This process is unique in Indiana, as it is only in Marion County judicial elections that primary voters do not vote for as many candidates for the office as there are persons to be elected to that office at the general election. *See* Ind. Code § 3-10-1-16. This process is apparently unique in the Nation also, as neither the court nor the parties have been able to find any other example of an election system quite like it.

Plaintiff, Common Cause of Indiana, is a non-profit, non-partisan public interest group that advocates for a number of causes, including the elimination of barriers to

1

voting. Common Cause, whose membership in Marion County is approximately 250, raises a First Amendment challenge under 42 U.S.C. § 1983 to the constitutionality of the Statute. Defendants are the Indiana Secretary of State, in her official capacity; the individual members of the Indiana Election Commission, in their official capacities; and the Governor of the State of Indiana, in his official capacity. Both parties now move for summary judgment. For the reasons set forth below, the court **GRANTS** the Plaintiff's motion, and **DENIES** the Defendants' motion.

## I. Background

Judges of the Marion Superior Court are elected to a six year term that begins on January 1 after the year of the judge's election and continues through December 31 in the sixth year. Ind. Code § 33-33-49-13(a). By statute, there are thirty-six judges that comprise the Marion Superior Court. Ind. Code § 33-33-49-6(a). To be eligible for the position, a person must have been admitted to the bar in Indiana for at least five years, and be a resident of Marion County. Ind. Code § 33-29-1-3(b); Ind. Code § 33-33-49-6.

The challenged Statute provides that a candidate for Marion Superior Court Judge may gain access to the general election ballot in one of four ways. First, a candidate may gain access through the primary election process. Primary elections are held by parties whose candidates for Indiana Secretary of State receive 10% of the votes cast in the last general election. Ind. Code § 3-10-1-2. As of 1974, only the Republican and Democratic candidates for Secretary of State have met this threshold. (Indiana Election Commission's Objections and Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 4).

To be included on the primary election ballot, a candidate must file a declaration of candidacy between early January and early February of the year of the primary election. Ind. Code § 3-8-2-4; Ind. Code § 3-8-2-5. The party affiliation of the candidate is determined either by how the person voted in the last Indiana primary or by the county chair who can certify that the person is a member of that party. Ind. Code § 3-8-2-7.

A political party may nominate not more than half of the candidates eligible to sit on the Marion Superior Court. Ind. Code § 33-33-49-13(b). The names of the party candidates nominated and certified to the Marion County election board are then placed on the general election ballot. Ind. Code § 33-33-49-13(c). In the general election, the candidates "run at large for the office of judge of the court and not as a candidate for judge of a particular room or division of the court." Ind. Code § 33-33-49-13(a).

Second, the Statute specifically provides that candidates may access the general election ballot by certified petition. Ind. Code § 33-33-49-13(b) ("Other candidates may qualify [for the general election ballot] under IC 3-8-6 to be voted on at the general election."). This requires an independent or minor party candidate to obtain the signatures of registered voters in the election district. Indiana law provides that the number of signatures needed is equal to 2% of the total votes cast in the district in the last election for Secretary of State. Ind. Code § 3-8-6-2. In the last election for Secretary of State (2010), Marion County voters cast 212,654 votes, 2% of which is 4,253. (Declaration of Bradley King ¶ 2 (f), (g); Declaration of Trent Deckard ¶ 2(f), (g)).

Third, a candidate from a minor political party may gain access to the general election ballot if he or she is nominated by the party at the party's state convention. Ind.

Code § 3-8-4-10(b); Ind. Code § 3-8-2-5(4)(A). A minor political party is one whose candidate for Secretary of State received at least two percent (2%) but less than ten percent (10%) of the votes cast in the previous general election. Ind. Code § 3-8-4-10(a). Once nominated, the candidate proceeds to the general election ballot.

Lastly, a person can file a declaration of intent to be a write-in candidate. Ind. Code § 3-8-2-2.5. A person has several months to file this declaration. Ind. Code § 3-8-2-2.5; Ind. Code § 3-8-2-4; Ind. Code § 3-8-2-5; Ind. Code 3-11-2-11.5. Once declared, these write-in candidates are eligible to receive votes in the general election. Ind. Code § 3-12-1-1.7(a).

Defendants submitted the declarations of J. Bradley King and Trent Deckard, Co-Directors of the Indiana Election Commission. Attached to their declarations are the primary election results from 2002 to 2014 for Marion Superior Court Judge, and the Indiana general election results for Secretary of State for the years 2006 and 2010. This evidence reflects that there were more Democratic and Republican candidates in the primary election than open positions. (*See generally*, King Decl., Exs. A, B, D, E; Deckard Decl., Exs. A, B, D, E). Additionally, in 2002, a minor-party candidate (Libertarian) for Marion Superior Court Judge made it onto the general election ballot. (King Decl., Ex. G; Deckard Decl., Ex. G).

## II.   Standard of Review

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

4

FED R. CIV. P. 56(a). The material facts are not in dispute; the issue before the court is purely one of law. Thus, the parties' cross motions are ripe for summary disposition.

## III. Discussion

According to Common Cause, the Republican and Democratic parties are the only parties that hold primary elections in Indiana, and each political party nominates exactly half of the open judicial positions available for the Marion Superior Court. This results in a system whereby the judicial candidates, who run at large, face no competition in the general election. All each candidate needs to win is one vote. Common Cause argues that this statutory scheme denies eligible Marion County voters their First Amendment right to cast a meaningful vote for candidates for Marion Superior Court Judge in the general election. Common Cause asks the court to declare that Indiana Code § 33-33-49-13 is unconstitutional. It also seeks an injunction "prohibiting defendants from enforcing Indiana Code § 33-33-49-13"; an injunction "ordering the Commission to advise local election authorities that [the Statute] is not to be enforced"; and an injunction prohibiting the Governor "from awarding any commissions to persons elected as judges in Marion County pursuant to [the Statute]." (Am. Compl., Request for Relief).

Both parties move for summary judgment regarding the facial validity of the Statute. Defendants also argue that neither Common Cause nor the Governor have standing. Given that standing is a jurisdictional argument, the court addresses that issue first.

### A. Standing

#### 1. Common Cause

Article III limits the "judicial power" of the United States to the resolution of "cases" and "controversies." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). While courts have the power to determine whether a statute is constitutional, this power arises only when the question is presented in an actual case or controversy between parties; courts do not have the power to issue advisory opinions. *Wisconsin's Envtl. Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir. 1984), *cert. denied*, 471 U.S. 1100 (1985). A plaintiff must have standing. *Valley Forge*, 454 U.S. at 471.

Standing has three elements: "injury in fact, a causal connection between the injury and the defendant's conduct, and likely redressability through a favorable decision." *Winkler v. Gates*, 481 F.3d 977, 979 (7th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The final two issues – causation and redressability – are in dispute. The element of causation requires that the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (citations and internal quotations omitted). The element of redressability requires that "it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (citation and internal quotations omitted).

Defendants argue that Common Cause lacks standing because a favorable decision will not redress their claimed injury. First, Defendants argue that invalidating the Statute will not alter the ballot-access requirements for candidates seeking the position of Judge of the Marion Superior Court. In particular, there will be no change in terms of how a

candidate gets on the primary election ballot and no change in terms of who can and cannot vote in the primary election. Second, Defendants argue there will be no change in the ability of minor-party candidates to appear on the general election ballot or for non-party candidates to do so. In other words, argue the Defendants, invalidating the Statute will not increase the ability of members of Common Cause to meaningfully participate in the process.

Common Cause's claim of injury has to do with the fact that, pursuant to the Statute, each party may nominate up to half of the open positions for Marion Superior Court Judge. Because primaries in Indiana are restricted to the two major parties – the Republican and Democratic parties – *only* persons eligible to vote in primary elections, *see* Ind. Code Indiana Code § 3-10-1-6,[1] will have an opportunity to cast a meaningful ballot for only half of the open judgeships; and persons not eligible to vote in these elections will have no say whatsoever in the election of judges to the Marion Superior Court. Through this lawsuit, Common Cause wants the "general election to mean something." Presently, votes cast in the general election lack meaning because, by virtue of the Statute, most, if not all, of the positions for the office of the Marion Superior Court are uncontested. Given this, the members of Common Cause have been and are being

---

[1] Pursuant to Indiana Code § 3-10-1-6, a person may vote at a primary election:
  (1) if the voter, at the last general election, voted for a majority of the regular nominees of the political party holding the primary election; or
  (2) if the voter did not vote at the last general election, but intends to vote at the next general election for a majority of the regular nominees of the political party holding the primary election;
  as long as the voter was registered as a voter at the last general election or has registered since then.

7

injured by their inability to cast a meaningful vote for Marion Superior Court Judge, and this injury is fairly traceable to the challenged Statute and may be remedied by declaratory and injunctive relief.

Next, Defendants argue that there is no guarantee that each party can garner sufficient candidates for Marion Superior Court Judge to fill all open positions in any given election year. Thus, invalidating the Statute will not provide the means for Marion County Democrats to elect all Democratic judges, nor the means for Marion County Republicans to elect all Republican judges. Further, Defendants argue, invalidating the Statute will not provide Independent voters with a better chance of electing Independent candidates.

Defendants' argument misses the point. The fact that voters may have a limited choice in candidates by virtue of individual or party decisions not to run is far removed from this case, where the lack of choice is by statutory design. Thus, although invalidating the Statute may not result in a full participation by each political party, it opens the avenue for more voter choice.

Lastly, Defendants argue that Common Cause lacks standing because the "positions of its 'Democratic, Republican, and independent' members . . . are actually in conflict because if one candidate wins, another necessarily loses." But this case – and the interest of Common Cause in the challenged Statute – is not about the outcome of elections. Common Cause is a non-partisan organization "dedicated to working so that citizens can make their voices heard in the political process" and "advocates for the elimination of barriers to voting and election fairness." (Affidavit of Julia Vaughn ¶ 5).

This interest in electoral integrity and in ensuring voters' ability to cast meaningful votes is shared by all of Common's Cause members and is germane to its purpose. Thus, the fact that members may prefer different candidates is wholly unrelated to their membership in Common Cause, and does not create a conflict affecting standing. Accordingly, the court finds Common Cause has standing to prosecute this action.

### 2. The Governor

Defendants maintain the Governor is an improper party because he only has the general authority to enforce the Statute, and that is not enough to confer standing. *1st Westco Corp. v. Sch. Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993) ("General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law."). *See also Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) ("[A] generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state law does not make him a proper defendant in every action attacking the constitutionality of a state statute.").

Pursuant to Indiana Code § 4-3-1-5(4), the Governor has the statutory duty to issue commissions to all judges in Indiana. Common Cause seeks to enjoin the Governor from issuing commissions to any judge elected under the Statute. In its Entry on the Defendants' Motion to Dismiss, the court found the Governor's specific statutory duty

9

was sufficient to render the Governor a proper party. (Entry on State Defendants' Motion to Dismiss at 11-13). The court stands by that ruling.

### B. Constitutionality of the Statute

"[V]oting is of the most fundamental significance under our constitutional structure." *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) (citing *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964)). Due in part to the constitutional provision allowing States to prescribe "[t]he Times, Places and Manner of holding elections for Senators and Representatives," Art. 1, § 4, cl. 1, States retain the power to regulate their own elections. *Burdick v. Takuski*, 504 U.S. 428, 433 (1992). As the Supreme Court observed, "'there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Id*. (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

State laws regulating elections "inevitably affect[] – at least to some degree – the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). To subject every voting regulation to strict scrutiny would "tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick*, 504 U.S. at 433. Therefore, a "more flexible standard applies,[2]" which requires the court to "weigh 'the character and magnitude of

---

[2] Although *Anderson and Burdick* were both ballot-access cases, the Supreme Court has confirmed their vitality in a much broader range of voting rights cases. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 204 (2008) (Scalia, J., concurring) ("To evaluate a law respecting the right to vote – whether it governs voter qualifications, candidate selection, or the voting process – we use the approach set out in *Burdick* . . . .").

the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id*. at 434 (quoting *Anderson*, 460 U.S. at 789). This balance means that, if the challenged regulation severely burdens the First and Fourteenth Amendment rights of voters, the regulation must be narrowly drawn to advance a compelling state interest. *Id*. (citation omitted). If the challenged regulation imposes "'only reasonable, nondiscriminatory restrictions'" on those rights, "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id*. (quoting *Anderson*, 460 U.S. at 788).

        **1.**        **Burden on the right to vote**

Defendants maintain the Statute does not impose a severe burden on the right to vote for two principle reasons. First, looking solely on the text of the Statute, they correctly note the statutory definition of "a political party" is not limited to the Republican and Democratic parties; any political party that achieves 10% of the vote for secretary of state in the last general election will be required to hold a primary. So, for example, if the Libertarian party garners enough votes for secretary of state in the last general election, it too will be allowed under the Statute to nominate not more than half of the candidates for judge.

The court fails to see how this lessens the burden on voters. All this means is that, instead of the two major parties being subject to the nominee "cap," three parties (for example) will be. Thus, instead of the Republicans and Democrats nominating 8 each (or

11

10, depending on the election year), a third-party may also nominate 8 (or 10). Although this provides for more than 16 (or 20), the Statute still precludes full representation of each party on the general election ballot. This, in turn, means that voters are denied the opportunity to meaningfully vote for a full slate of candidates from their chosen party.

Second, Defendants argue the Statute provides the appropriate constitutional framework because Indiana law has statutory procedures that allow independent and third-party judicial candidates to access the general election ballot for Marion Superior Court Judge. In support of this proposition, they cite a number of cases, the most closely analogous of which is *New York State Board of Elections v. Lopez-Torres*, 552 U.S. 196 (2008).

*Lopez-Torres* involved a First Amendment challenge to New York State's system for electing Supreme Court (trial court) justices. *Id*. at 201. That system employs a "delegate primary" convention selection system where the judicial candidates for the Supreme Court are selected by a convention of delegates rather than by open primary election. *Id*. at 200-01. The delegates from each of New York's 150 assembly districts are elected by major party members at a "delegate primary." *Id*. at 200. The parties then hold a nominating convention in each judicial district (there are 12), where the delegates nominate the candidates who then run at-large in the general election. Independent or third party candidates who are able to timely obtain the requisite number of signatures on a petition also appear on the general election ballot. *Id*. at 200-01.

Following the major parties' refusal to nominate the candidate-plaintiffs, they, the voters who claimed to have supported these candidates, and the New York branch of

Common Cause, brought a First Amendment claim against the New York State Election Board alleging "that New York's election law burdened the rights of challengers seeking to run against candidates favored by the party leadership, and deprived voters and candidates of their rights to gain access to the ballot and to associate in choosing their party's candidates." *Id*. at 201.

The Supreme Court held that New York's electoral system did not violate the plaintiffs' First Amendment right to political association. In relevant part, the plaintiffs argued that the existence of an entrenched "one-party rule" – *i.e*., Democrats in certain districts; Republicans in others – in the State's general election demands that the First Amendment be used to impose additional competition in the parties' nominee-selection process. *Id*. at 207. While, "[c]ompetiveness may be of interest to the voters in the general election, and to the candidates who choose to run against the dominant party," "those interests are well enough protected so long as all candidates have an adequate opportunity to appear on the general-election ballot." *Id*. The Court found the New York electoral process met that standard because it provided a means by which candidates who were not able to obtain a major party's nomination via the convention process could get on the general election ballot by obtaining the requisite number of signatures on a petition. *Id*. at 207-08.

In New York, therefore, the major parties each selected candidates – albeit through nominating convention rather than primary convention – to compete with one another at

13

the general election. Although, as a practical matter, many races were uncontested,[3] this "one-party entrenchment" resulted not from the electoral scheme itself but from the natural consequences of electoral politics: the Republican Party may choose not to run a candidate in a heavily Democratic district, or vice versa, simply because of an assessment as to the candidate's chance of victory.

By contrast, the electoral scheme set forth in the challenged Statute does not contemplate contested judicial races in the general election.[4] Each political party may nominate not more than half of the open slots for Marion Superior Court Judge; it does not provide that each political party may nominate *up to the number* of open slots for that election. The fact that independent or third-parties may gain access to the ballot does not alter the Statute's unique structure. As an example, if, as in 2002, one candidate petitions to appear on the general election ballot, and 16 seats are available, a ballot selecting 16 only meaningfully impacts the election for the last judgeship selected. Thus, the potential for independent and third-party candidates to appear on the ballot does not alleviate the

---

[3] The Second Circuit's decision in *Lopez-Torres v. New York State Election Board* noted that, "Over a 12-year period between 1990 and 2002, almost half of the State's elections for Supreme Court Justice were entirely uncontested." 462 F.3d 161, 178 (2nd Cir. 2006).

[4] This point is best exemplified by a recent post from the Indiana Law Blog, dated two months *before* the general election, which lists the changes in the court assignments to the Marion Superior Court, effective January 1, 2015. *Ind. Courts – Changes in Marion County Court Assignments*, Indiana Law Blog (Sept. 5, 2014, 4:18 PM), http://indianalawblog.com/archives/2014/09/ind_courts_chan_16.html. *See also Marion County Court Assignments Made for 2015* (Sept. 10, 2014), Indianapolis Bar Association, http://www.indybar.org/news/indybar-news/2014/271 (showing the court assignments to the Marion Superior Court decided by the Marion County Executive Committee, including the "new judge assignments" in the criminal courts). Thus, all the candidates, evenly split between the two major parties, are guaranteed to win in the upcoming general election. Once a candidate votes for him- or herself, any additional vote is a superfluous act.

burden imposed by Indiana's electoral scheme: when a person proceeds to the ballot box on Election Day, he or she must be afforded an opportunity to vote for the judge who will fill Marion Superior Court # 1, the judge who will fill Marion Superior Court # 2, and so forth. Indiana law does not permit this. The New York law at issue in *Lopez-Torres* does. The court therefore finds the challenged Statute severely burdens the right to vote.

### 2. State Interests

Next, the court is called upon to "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. In response to Common Cause's interrogatory request, Defendants declined to offer any justification for the Statute. (*See, e.g.*, Indiana Election Commission's Response to Interrogatory No. 2). They now argue the challenged Statute furthers legitimate purposes such as: (1) requiring candidates to muster a significant modicum of support, (2) the prevention of electoral factionalism, (3) the reduction of confusion for voters, (4) ensuring the integrity of the primary/general election process, and (5) the unique nature of judicial positions. Defendants need not actually prove the existence of these asserted interests, *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986), but they must show how the interests they advance justify the burden imposed by the Statute. *Anderson*, 460 U.S. 780, 789 (1983) (In balancing the asserted injury to the plaintiff with the interests of the State, "the Court must not only determine the legitimacy and strength of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.").

Defendants do not argue these interests with much specificity. The thrust of their argument is based upon a concern that invalidation of the Statute could cause the names on the general election ballot to "mushroom with candidates," which could create a system whereby no one judicial candidate obtains a significant modicum of support. Defendants worry that this "free-for-all" system could also lead to intensely partisan and expensive campaigning. In sum, Defendants justify the nominee cap as a means of making the judicial elections in Marion County more manageable. These concerns, they argue, are amplified as this case involves the election of judges, who are supposed to be seen as unbiased and non-partial in the administration of justice.

Defendants do not explain how the challenged Statute furthers any of these interests. The judicial candidates are selected through a *partisan* primary process. The fact that the Statute provides that one half of all judges in Marion County are Republican and one half Democrat does not make the office of the Marion County Court less partisan and less politicized. A case could be made that judicial selection in Marion County is even more so, as the Republican and Democratic candidates must compete for the chance to be slated by the party, and convince members of the party to vote for them in the primary over other candidates from the same party. In sum, the argument that the nominee cap is in place to lessen the partisan and political nature of judicial elections in Marion County falls short.

Defendants also fail to explain how the challenged Statute furthers its related interest in having an "actual and perceived impartial judiciary." (Defendants' Reply at 30). Each candidate is listed on the general election ballot with his or her party

16

designation. And for every election since 2002, each candidate was selected through the partisan process noted above – one step removed from the popular choice at the general election. While the public's perception of an impartial judiciary is certainly compelling, the challenged Statute does not further that end.

Relatedly, it is also worth noting that there is no constitutional right to have judges elected. *See, e.g., Bradley v. Work*, 916 F.Supp. 1446 (S.D. Ind. 1996), *aff'd* 154 F.3d 704 (7th Cir. 1998) (upholding lawfulness of the Lake County System where judges are selected through a judicial nominating commission). Indeed, in both Lake and St. Joseph counties, judges are selected through an entirely different system involving a judicial nominating commission, gubernatorial appointment and retention votes. *See* Ind. Code §§ 33-33-45-25 through 33-33-45-42 (Lake County); Ind. Code §§ 33-33-71-29 through 33-33-71-43 (St. Joseph County). Indiana, however, has not chosen to abandon judicial elections in Marion County. Nor has it adopted the lesser restrictive alternative to the politicization of judicial elections, adopted in, for example, Vanderburgh County, of allowing contested elections for each of its seven superior courts, but making the elections nonpartisan, listing the candidates without party designation. Ind. Code § 33-33-82-31.

Defendants also raise the concern that "including scores of candidates could lead to voter confusion and voter fatigue and the inability of voters to understand what any particular candidate stands for." (Defendants' Reply at 14). Defendants' concerns are a function of the fact that Marion County is the state's most populous county and, consequently, has 36 elected Superior Court Judges. The court has faith that Marion

17

County voters can understand a ballot that reads, "Vote for 16," whether there are 16 candidates to choose from, or 30. In addition, Defendants' concerns regarding voter fatigue and voter education are applicable to any election, and cannot be remedied by a statute that attempts to remedy this concern by taking candidate choice away from voters. In any event, if voter confusion was actually a concern of the Defendants, they could easily clarify the ballot by requiring that each court be elected separately. Maintaining the status quo in Marion County simply is not justified on this basis.

In sum, the Defendants asserted state interests do not justify the challenged Statute. Accordingly, the court finds and declares that Indiana Code § 33-33-49-13(b) is unconstitutional.

## IV. Conclusion

Common Cause has successfully established that the challenged Statute, Indiana Code § 33-33-49-13(b), is invalid on its face – *i.e*., in all its applications. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 200 (2008). Common Cause's Motion for Summary Judgment (Filing No. 40) is **GRANTED**, and the Defendants' Motion for Summary Judgment (Filing No. 57) is **DENIED**. Defendants are permanently enjoined from enforcing Indiana Code § 33-33-49-13. The court's ruling is hereby **STAYED** during the thirty-day period within which the Defendants may file a Notice of Appeal pursuant to Federal Rule of Appellate Procedure 4(a). If a Notice of Appeal is filed, the court's ruling is **STAYED** pending a final determination by the Seventh Circuit Court of Appeals.

**SO ORDERED** this 9th day of October 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.